# Appointment of a Federal Judge to the United Nations Delegation

If this were a matter of first impression, appointing a federal judge to be a representative of the United States to the General Assembly of the United Nations would be inconsistent with the constitutional doctrines of separation of powers and independence of the judiciary. However, because of the longstanding practice of appointing federal judges to temporary office in the Executive Branch, and the absence of any explicit constitutional text, it cannot be maintained that such an appointment would be unconstitutional.

August 5, 1976

MEMORANDUM OPINION FOR THE ASSOCIATE COUNSEL
TO THE PRESIDENT

This is in response to your inquiry relating to the appointment of a judge of the U.S. Court of Appeals[1] to be a representative of the United States to the General Assembly of the United Nations.

Section 2(c) of the United Nations Participation Act of 1945, Pub. L. No. 79-264, § 2(c), 59 Stat. 619, *codified at* 22 U.S.C. § 287(c) (1976), provides that the President shall appoint by and with the advice and consent of the Senate not to exceed five representatives of the United States to attend a specified session or sessions of the General Assembly of the United Nations. Pursuant to section 3 of the Act, 22 U.S.C. § 287a (1976), those representatives "act in accordance with the instructions of the President transmitted by the Secretary of State."

Even though the Constitution does not contain for judges any express prohibition from simultaneous service in the Executive Branch similar to that established for congressmen under Article I, Section 6, Clause 2, I would nonetheless advise, if this were a matter of first impression, that an appointment of the sort suggested would be inconsistent with the constitutional doctrines of separation of powers and independence of the judiciary. However, in addition to the absence of any explicit prohibition, there is a constitutional practice of appointing federal judges to temporary office in the Executive Branch which goes back to the diplomatic service rendered by Chief Justices John Jay and Ellsworth during the administrations of Presidents Washington and John Adams. The last instance was the appointment of District Judge Boldt to the position of Chairman of the Pay Board in 1971.[2] Because of this longstanding practice, and the absence of any explicit

---

[1] We have been informally advised that the judge in question is in active service.

[2] For other instances, *see, e.g.*, *International Military Tribunal*, 40 Op. Att'y Gen. 423 (1945); *Nominations of Hon. Marvin Jones and Hon. John Caskie Collet*, S. Exec. Rep. No. 80-7 (1947), *reprinted in Independence of Judges: Should They Be Used for Non-Judicial Work?*, 33 A.B.A.J. 792 (1947); Alpheus Thomas Mason, *Harlan Fiske Stone: Pillar of the Law* 704 & n. (1956) ("Mason").

constitutional text, I think it cannot be maintained that such an appointment would be unconstitutional.

During this century, however, it has been asserted with increasing frequency that, while the practice of appointing judges to temporary positions in the Executive Branch may have been justified by the conditions prevailing during the early years of the Republic, "the propriety of the practice should be examined anew if the integrity of the judiciary in American life is to be preserved." S. Exec. Rep. No. 80-7, *supra* note 2, at 2. That report cites the following undesirable aspects of such appointments:

> (1) Reward may be conferred or expected in the form of elevation to a higher judicial post.
>
> (2) The judicial and executive functions may be improperly merged.
>
> (3) The absence of the judge from his regular duties increases the work load of the other judges of the court, if any, and may result in an impairment of judicial efficiency in the disposition of cases.
>
> (4) Nonjudicial activities may produce dissension or criticism and may be destructive of the prestige and respect of the Federal judiciary.
>
> (5) A judge, upon resumption of his regular duties, may be called upon to justify or defend his activities under an Executive commission.

*Id.* at 6 (footnotes omitted).[3]

In 1958, Chief Justice Warren, in a letter addressed to Congressman Keating, commented adversely on a proposal to have a justice of the Supreme Court serve on a commission to determine presidential disability:

> MY DEAR MR. CONGRESSMAN: During the time the subject of inability of a President to discharge the duties of his office has been under discussion, the members of the Court have discussed generally, but without reference to any particular bill, the proposal that a member or members of the Court be included in the membership of a Commission to determine the fact of Presidential inability to act.

---

[3] For Chief Justice Stone's rejection of President Franklin D. Roosevelt's offer to serve on a commission to study the rubber supply during World War II, and for his attitude on Justice Jackson's service on the Nuremberg Tribunal, *see* Mason, *supra* note 2, at 709–20.

It has been the belief of all of us that because of the separation of powers in our Government, the nature of the judicial process, the possibility of a controversy of this character coming to the Court, and the danger of disqualification which might result in lack of a quorum, it would be inadvisable for any member of the Court to serve on such a Commission.

I realize that Congress is confronted with a very difficult problem, and if it were only a matter of personal willingness to serve that anyone in the Government, if requested to do so, should make himself available for service. However, I do believe that the reasons above mentioned for nonparticipation of the Court are insurmountable.[4]

This trend culminated in 1973 in the approval by the Judicial Conference of the United States of Canon 5(G) of the Code of Judicial Conduct of United States Judges:

*Extra-judicial appointments.* A judge should not accept appointment to a governmental committee, commission, or other position that is concerned with issues of fact or policy on matters other than the improvement of the law, the legal system, or the administration of justice. A judge, however, may represent his country, state, or locality on ceremonial occasions or in connection with historical, educational, and cultural activities.

*Commentary:* Valuable services have been rendered in the past to the states and the nation by judges appointed by the executive to undertake important extra-judicial assignments. The appropriateness of conferring these assignments on judges must be reassessed, however, in light of the demands on judicial manpower created by today's crowded dockets and the need to protect the courts from involvement in extra-judicial matters that may prove to be controversial. Judges should not be expected or permitted to accept governmental appointments that could interfere with the effectiveness and independence of the judiciary.

Since the duties of the United States Representative to the General Assembly of the United States are not of a historical, educational, or cultural nature, Canon 5(G) precludes a federal judge on active duty from accepting that position. It is far

---

[4] *Reprinted in Presidential Inability: Hearings Before the Subcomm. on Constitutional Amendments of the S. Comm. on the Judiciary*, 85th Cong., 2d Sess. at 14 (1958). Nevertheless, Chief Justice Warren accepted the position of Chairman of the Commission to investigate the assassination of President Kennedy.

from clear what sanctions are available for violation of the Judicial Conference's Canons. Some judges have openly refused to comply with those portions which relate to required financial disclosure—with apparent impunity except for publication of their names by (I believe) the Administrative Office of the United States Courts. Nonetheless, it does seem inadvisable to place the President in the position of prompting action which is in violation of the Canons.

Finally, I wish to recall the fact that the Executive Branch has taken a rather firm stand of late on various matters bearing upon the principle of separation of powers. I refer in particular to our opposition to disapproval of executive action by one-house or concurrent resolutions, and congressional participation in the appointment of executive officers. It would invite attack to combine such a pristine view of separation vis-à-vis the Congress with a latitudinarian stance insofar as the courts are concerned.

ANTONIN SCALIA
*Assistant Attorney General*
*Office of Legal Counsel*